IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

DONALD M. DOVE,

                    Plaintiff,                    Civil Action No.
                                                  3:14-CV-0627 (MAD/DEP)

        v.

CITY OF BINGHAMTON, *et al.*,

                    Defendants,
_____

APPEARANCES:                                      OF COUNSEL:

FOR PLAINTIFF:

DONALD M. DOVE, *Pro se*
10-B-0378
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

FOR DEFENDANTS:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>AMENDED REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Donald M. Dove, a New York State prison inmate and serial litigant, has commenced this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his civil rights.[1] In his complaint, plaintiff challenges his arrest in October 2007, and his sentencing as a persistent violent felony offender in January 2010, alleging that he was denied due process and equal protection and defendants' stop and frisk practices are unlawful.

Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for consideration. For the reasons set forth below, I recommend that plaintiff's application for leave to proceed IFP be denied.

I.    <u>BACKGROUND</u>

Plaintiff's complaint in this action was filed with the court on May 29, 2014. *See generally* Dkt. No. 1. Plaintiff is a state prison inmate being held at the Elmira Correctional Facility, located in Elmira, New York. *Id.* at 1.

---

[1]    Aside from this lawsuit, plaintiff has commenced at least eight other actions in this district, including: (1) *Dove v. City of N.Y. Police Dep't*, No. 14-CV-0772 (N.D.N.Y. filed June 25, 2014); (2) *Dove v. Pesce*, No. 13-CV-1417 (N.D.N.Y. filed Nov. 14, 2013); (3) *Dove v. Smith*, No. 13-CV-1411 (N.D.N.Y. filed Nov. 7, 2013); (4) *Dove v. Smith*, No. 13-CV-1315 (N.D.N.Y. filed Oct. 23, 2013); (5) *Dove v. Lee*, 12-CV-0835 (N.D.N.Y. filed May 21, 2012); (6) *Dove v. Lee*, No. 12-CV-0738 (N.D.N.Y. filed May 3, 2012); (7) *Dove v. Broome Cnty. Corr. Facility*, No. 10-CV-0002 (N.D.N.Y. filed Jan. 4, 2010); (8) *Dove v. Harder*, 09-CV-0259 (N.D.N.Y. filed Mar. 4, 2009).

Plaintiff alleges that he was arrested in Binghamton, New York, on October 21, 2007, and sentenced on January 19, 2010, as a persistent violent felony offender. *Id.* at 4. In his complaint, plaintiff contends that (1) his Fourteenth Amendment rights were violated by his prosecution for criminal possession of a weapon in the third degree; (2) he was unlawfully stopped based on racial profiling in violation of his rights to due process and equal protection; (3) he was illegally sentenced; and (4) the stop-and-frisk practices of the Broome County Police Department that led to his arrest are unconstitutional. *Id.* at 5.

## II.   DISCUSSION

When a civil action is commenced in a federal district court, the statutory filing fee, set at $400 at the time plaintiff filed this action, must ordinarily be paid. 28 U.S.C. § 1915(a). Although a court is authorized to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, 28 U.S.C. § 1915(a)(1), section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state

3

> a claim upon which relief may be granted, unless
> the prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this

"three strikes" provision was to deter the filing of multiple, frivolous civil

rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d

Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997));

*accord*, *Gill v. Pidlychak*, No. 02-CV-1460, 2006 WL 3751340, at *2

(N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and

recommendation by* Treece, M.J.).[2] The prophylactic effect envisioned

under section 1915(g) is accomplished by requiring a prisoner who has

accumulated three strikes to engage in the same cost-benefit analysis

before filing suit as other civil litigants engage in – that is, the provision

forces inmates to assess whether the result sought to be achieved justifies

the payment of the filing fee in advance, rather than in installments as

provided under 28 U.S.C. § 1915(b). *Tafari*, 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks

an arguable basis either in law or in fact." *Tafari*, 473 F.3d at 442 (citing

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). To determine whether a

---

[2]     All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

4

dismissal satisfies the failure-to-state-a-claim prong of section 1915,

courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

guidance. *Tafari*, 473 F.3d at 442. The question of whether the dismissal

of a prior action constitutes a strike for purposes of section 1915(g) is a

matter of statutory interpretation and, as such, presents a question for the

court. *Id.*

Based upon a careful review of plaintiff's litigation history, I conclude

that, at the time this action was filed, plaintiff had accumulated at least

three strikes for purposes of section 1915(g). Plaintiff's first strike occurred

in *Dove v. Smith*, No. 13-CV-1411 (N.D.N.Y. filed Nov. 7, 2013), when the

action was dismissed on the basis that the named defendants were

entitled to judicial and prosecutorial immunity. *Smith*, No. 13-CV-1411,

Dkt. Nos. 4, 6. *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011)

("[Section 1915(g)] does not explicitly categorize as frivolous a claim

dismissed by reason of judicial immunity, but we will: Any claim dismissed

on the ground of absolute judicial immunity is 'frivolous' for purposes of 28

U.S.C. § 1915(g)."); *accord, Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir.

2011). Plaintiff accumulated a second strike in *Dove v. Smith*, No. 13-CV-

1315 (N.D.N.Y. filed Oct. 23, 2013). That action, in which he asserted

claims identical to those presented in *Dove v. Smith*, No. 13-CV-1411, was

dismissed, in the first place, because it was frivolous as duplicative of an action already pending, and alternatively based on the ground that the defendants were entitled to absolute immunity. *Smith*, No. 13-CV-1315, Dkt. Nos. 4, 7. Plaintiff accumulated his third strike in *Dove v. Pesce*, No. 13-CV-1417 (N.D.N.Y. filed Nov. 14, 2013), which was dismissed based on *res judicata*. *Pesce*, No. 13-CV-1417, Dkt. No. 4, 7. *See Elufe v. Clauberg*, No. 11-CV-5291, 2012 WL 1506692, at *1 (S.D.N.Y. Apr. 27, 2012) (construing dismissal based on *res judicata* a strike for purposes of section 1915(g)).[3]

Because I conclude that plaintiff had accumulated at least three strikes for purposes of section 1915(g) prior to commencing this action, I find that he is not entitled to proceed in this action IFP unless he has alleged that he faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 562 (2d Cir. 2002) ("[Section] 1915(g) allows prisoners to escape the three strikes rule

---

[3]    Plaintiff also filed an action in the Eastern District of New York, *Dove v. Pesce*, No. 13-CV-5766, (E.D.N.Y. filed Oct. 17, 2013), which was dismissed for failure to state a claim upon which relief may be granted prior to the commencement of this action. *Pesce*, No. 13-CV-5766, Dkt. No. 5 at 5. Because plaintiff appealed that dismissal, and the Second Circuit did not dismiss that appeal, as lacking an arguable basis in law or fact, until after plaintiff filed this action, the dismissals in the district court and Second Circuit do not constitute strikes for purposes of this action. *See Partee v. Connolly*, No. 08-CV-4007, 2009 WL 1788375, at *2 (S.D.N.Y. June 23, 2009) ("[A] dismissal does not count as a strike until after the opportunity to appeal has been exhausted or waived." (citing cases)).

only if the prisoner is under imminent danger of serious physical injury."
(quotation marks, emphasis omitted)). In accordance with this exception,
an inmate who has had three prior "strikes" but nonetheless wishes to
commence a new action IFP must show that he was under imminent
danger at the time of filing; the exception does not provide a basis to avoid
application of the three strikes on the basis of past harm. *Malik*, 293 F.3d
at 562-63. An inmate who claims the benefit of this exception must also
show that the danger faced rises to the level of exposure to a "serious
physical injury." 28 U.S.C. § 1915(g). The imminent danger claimed by the
inmate, moreover, must be real, and not merely speculative or
hypothetical. *See Johnson v. Barney*, No. 04-CV-10204, 2005 WL
2173950, at *1-2 (S.D.N.Y. Sept. 6, 2005) (finding that the inmate's
allegation of danger at a facility in which he was not housed, but may pass
through at infrequent occasions in the future, does not establish imminent
danger). For a three-strikes litigant to qualify for the imminent danger
exception, his complaint "must reveal a nexus between the imminent
danger it alleges and the claims it asserts." *Pettus v. Morgenthau*, 554
F.3d 293, 298 (2d Cir. 2009). When determining whether the requisite
relationship is present a court must examine "(1) whether the imminent
danger of serious physical injury that a three-strikes litigant alleges is *fairly*

*traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Pettus*, 554 F.3d at 299 (emphasis in original).

The term "serious physical injury," as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death[.]" *Ibrahim v. D.C.*, 463 F.3d 3, 7 (D.C. 2006). In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002).

In this instance, plaintiff's complaint fails to allege any facts related to imminent physical injury. *See generally* Dkt. No. 1. Plaintiff's claims, asserted against the City of Binghamton, the Binghamton Police Department, and a Binghamton police officer, stem from his arrest and prosecution that occurred several years ago. As such, plaintiff does not qualify for the imminent danger exception to section 1915(g).

Based upon the foregoing, I recommend that plaintiff's application for leave to proceed IFP be denied.

IV.    SUMMARY AND RECOMMENDATION

Because plaintiff accumulated three strikes pursuant to section 1915(g) prior to the commencement of this action, he is precluded from proceeding IFP in this case. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) be DENIED, and that plaintiff be directed to pay the full filing fee of $400 no later than thirty days from the date of any order adopting this report; and it is further hereby

RECOMMENDED that if the full filing fee is not received within that thirty-day period, the clerk be directed to dismiss  plaintiff's complaint without further order of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing amended report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     September 8, 2014
           Syracuse, New York



Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Cedric PARTEE, Plaintiff,
v.
Glenn GROOD, Commissioner of the New York
State Department of Correctional Service, Lester N.
Wright, Dental Director of New York State Depart-
ment of Correctional Serv., William J. Connoll, Su-
perintendent of Fishkill Correctional Facility, L.
Zwillinger, Regional Health Administrator at
Fishkill Correctional Facility, and Mary D'Silva,
Dentist at Fishkill Correctional Facility, Defend-
ants.

No. 06 Civ. 15528(SAS).
July 25, 2007.

Cedric Partee, Fishkill Correctional Facility,
Beacon, New York, Plaintiff pro se.

Benjamin Lee, Assistant Attorney General, New
York, NY, for Defendants.

*OPINION AND ORDER*
SCHEINDLIN, J.
I. INTRODUCTION

*1 Cedric Partee, an inmate of the New York
State Department of Correctional Services
("DOCS"), proceeding pro se, brings suit under
section 1983 of Title 42 of the United States Code
against Glenn Goord,[FN1] Lester N. Wright, Willi-
am J. Connolly,[FN2] and Lawrence Zwillinger, all
of whom are present or former DOCS employees,
and Mary D'Silva, a dentist at Fishkill Correctional
Facility (collectively, "Defendants"). Partee alleges
that all of the defendants acted with deliberate dis-
regard for his medical needs in violation of his
rights under the Eighth and Fourteenth Amend-
ments.[FN3] He seeks an award of $100,000 against
each defendant.[FN4]

FN1. Former Commissioner Goord is sued
incorrectly herein as "Glenn Grood."

FN2. Superintendent Connolly is sued in-
correctly herein as "William J. Connoll."

FN3. *See* Complaint ("Compl.") ¶¶ II(D),
V.

FN4. *See id.* ¶ V.

Defendants now move to dismiss the lawsuit
based on Partee's failure to exhaust administrative
remedies.[FN5] Defendants additionally move to dis-
miss the claims against Goord, Zwillinger, Con-
nolly and Wright, claiming qualified immunity and
lack of personal involvement, and, with regard to
Goord and Zwillinger, for failure to state a claim.
[FN6] For the reasons below, defendants' motion is
granted and this case is dismissed.

FN5. *See* 42 U.S.C.1997e(a).

FN6. *See* Fed.R.Civ.P. 12(b)(6).

II. FACTS [FN7]

FN7. The following factual allegations,
taken from the Complaint, are accepted as
true for purposes of this motion.

In April of 2003, while Partee was being
housed as a prisoner in Clinton Correctional Facil-
ity, his dentures were damaged as a result of "self
adjustment." [FN8] Dr. Afzal, an employee of the
Clinton Correctional Facility, submitted a request
to the "Central Office Director of Dental Services"
for Partee to receive new dentures, which was
denied because Partee was "ineligible to receive
new dentures until 4/12/06." [FN9] On April 17,
2003, Partee filed a grievance through the DOCS
Inmate Grievance Program ("IGP"), requesting that
his denture be repaired. After two unfavorable de-
cisions, Partee was advised by the CORC that, as
his own "self adjustment to [the] denture rendered

it irreparable[,]" he would either have to pay for a replacement denture at his own expense, or wait until April 12, 2006, when he would be eligible for a new set of dentures at DOCS's expense.[FN10]

> [FN8]. 6/11/03 Central Office Review Committee Determination ("CORC Determination"), Ex. A to Compl. at p. 2.

> [FN9]. 7/3/06 Letter from Plaintiff to William J. Connolly ("Connolly Letter"), Ex. B. to Compl., at p. 1.

> [FN10]. CORC Determination at p. 2.

In September of 2003, Partee was transferred to Attica Correctional Facility.[FN11] While there, Partee underwent dental surgery on July 26, 2005, and some of his upper teeth were extracted "based on a dental diagnosis."[FN12] Three months later, in November of 2005, Partee was scheduled to have impressions of his remaining teeth taken in preparation for new dentures.[FN13] Before the impressions were taken, he was transferred to Gowanda Correctional Facility "because his classification had dropped."[FN14] At Gowanda, Partee was placed on a six-month waiting list to have the impressions taken, but before his turn came, he was again transferred, this time to Fishkill Correctional Facility.[FN15] On May 28, 2006, at Fishkill, Partee was seen by Dr. D'Silva, who advised Partee that there was "no bone to hold [his] teeth," and that no impression would be taken unless he allowed D'Silva to remove his remaining upper teeth.[FN16] Partee refused to consent to the extraction of his teeth and remains without dentures.[FN17] As a result, Partee has suffered pain and an "inability to engage in normal activities, such as eat properly [sic]."[FN18]

> [FN11]. *See* Compl. ¶ II(D).

> [FN12]. *Id.*

> [FN13]. *See id.*

> [FN14]. Connolly Letter at 1.

> [FN15]. *See* Compl. ¶ II(D).

> [FN16]. Connolly Letter at 1.

> [FN17]. *See* 6/29/06 Grievance, Ex. A to Compl., at 1 (requesting that dental work be completed).

> [FN18]. Plaintiff's Traverse ¶ 6.

**\*2** On June 29, 2006, Partee filed grievance # 28014-06, through the IGP, against D'Silva, requesting that his "dential [sic] work be completed without the added opinion of Dr. D'Silda [sic]...."[FN19] After a hearing, the Inmate Grievance Review Committee ("IGRC") rendered a decision, denying Partee's grievance.[FN20] The IGRC concluded that Partee's "requested action [was] beyond the purview of the IGRC."[FN21] The cover sheet to the IGRC decision stated that if Partee wished to appeal the decision, he would have to do so by April 17, 2006-a date which had passed three months earlier.[FN22] Partee subsequently submitted typed letters to Lester N. Wright, Deputy Commissioner and Chief Medical Officer of DOCS,[FN23] and William J. Connolly, then-Superintendent at Fishkill Correctional Facility,[FN24] complaining about Dr. D'Silva's refusal to provide dentures unless Partee first agreed to allow the extraction of his upper teeth. The letter to Wright requested that Dr. D'Silva be directed to complete Partee's impressions.[FN25] Partee's letter to Connolly accused Dr. D'Silva of racism and demanded that an investigation be conducted against her.[FN26] Partee did not formally appeal the IGRC decision on grievance # 28014-06.[FN27] Instead, he commenced the instant action on October 4, 2006.[FN28]

> [FN19]. 6/29/06 Grievance at 1.

> [FN20]. *See* 7/11/06 Memorandum, Ex. A to Compl., at 4.

> [FN21]. *Id.*

> [FN22]. *See id.* at 3

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

FN23. *See* 6/28/06 Letter from Plaintiff to Letter N. Wright ("Wright Letter"), Ex. C to Compl., at 1-2.

FN24. *See* Connolly Letter at 1-3.

FN25. Wright Letter at 2.

FN26. *See* Connolly Letter at 2.

FN27. *See* Compl. ¶ IV(F)(3).

FN28. *See id.* at 7.

## III. LEGAL STANDARDS

### A. Motion to Dismiss

" Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary...." FN29 When a complaint is attacked by a Rule 12(b)(6) motion to dismiss, the plaintiff need not provide "detailed factual allegations." FN30 To survive a motion to dismiss, it is enough that the complaint "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." FN31

FN29. *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007).

FN30. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007).

FN31. *Id.*

When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's complaint, which are accepted as true, as well as "documents relied on or incorporated by reference in the complaint." FN32 To survive dismissal, the allegations in the complaint must meet the standard of "plausibility." FN33 A complaint must "amplify a claim with some factual allegations ... to render the claim *plausible.*" FN34 In other words, the complaint must provide "the grounds upon which

[the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " FN35 Thus, while a court must take the plaintiff's allegations as true, "the claim may still fail as a matter of law if it appears ... that the plaintiff can prove no set of facts in support of its claim which would entitle [him] to relief, or if the claim is not legally feasible." FN36

FN32. *International Design Concepts, LLC v. Saks, Inc.,* 486 F.Supp.2d 229, 235-36 (S.D.N.Y.2007).

FN33. *Bell Atlantic,* 550 U.S. 544, 127 S.Ct. at 1970.

FN34. *Iqbal v. Hasty,* No. 05 Civ. 5768, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11).

FN35. *ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 2007 WL 1989336, at *5 (2d Cir. July 11, 2007) (quoting *Bell Atlantic,* 551 U.S. __, 127 S.Ct. at 1965).

FN36. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 457 F.Supp.2d 455, 459 (S.D.N.Y.2006) (citing *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006)).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. FN37 The PLRA's exhaustion requirement is mandatory. FN38 Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* in-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

mate-plaintiffs may bring their federal claims to court *at all."* [FN39] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed ... is insufficient." [FN40] Moreover, the exhaustion of administrative remedies must be *proper*-that is, in compliance with a prison grievance program's deadlines and other critical procedural rules-in order to suffice. [FN41] The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [FN42]

> FN37. *See* 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

> FN38. *See Porter v. Nussle,* 534 U.S. 516, 516 (2002). *See also Booth v. Churner,* 532 U.S. 732, 739 (2001).

> FN39. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) (quotation marks and citation omitted).

> FN40. *Id.*

> FN41. *See Woodford v. Ngo,* 126 S.Ct. 2378, 2386-87 (2006).

> FN42. *Porter,* 534 U.S. at 532.

**\*3** Before bringing suit in federal court, an inmate must fully present his claim for internal resolution within the correctional facility and the DOCS. The DOCS grievance procedure is the IGP, which consists of three tiers. [FN43] *First,* the inmate files a grievance with the Grievance Clerk, and the griev-

ance will be decided by the IGRC. [FN44] An adverse decision from the IGRC may be appealed to the Superintendent of the facility. [FN45] Finally, adverse decisions at the Superintendent level can be appealed to the CORC. [FN46] In order to survive a motion to dismiss, an inmate/plaintiff must have fully exhausted administrative remedies at all levels of appeal. [FN47] Thus, an inmate/plaintiff's claim is not exhausted until he appeals to the CORC and receives a final decision regarding his grievance.

> FN43. *See Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004).

> FN44. *See* 7 N.Y. Comp.Codes R. & Regs. §§ 701.5(a) & (b).

> FN45. *See id.* § 701.5(c).

> FN46. *See id.* § 701.5(d).

> FN47. *See Mendez v. Artuz,* No. 01 Civ. 4157, 2002 WL 313796, at \*2 (S.D.N.Y. Feb. 27, 2002) ("[T]he exhaustion requirement is not satisfied until the administrative process has reached a final result.").

The Second Circuit has, however, recognized that in certain situations a prisoner who fails to fully exhaust administrative remedies may survive a motion to dismiss. [FN48] In *Hemphill v. New York,* the court announced a three-part inquiry "appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." [FN49] Examining the complaint, the court must ask:

> FN48. *See Hemphill,* 380 F.3d at 687-90.

> FN49. *Id.* at 686.

[*First,*] whether administrative remedies were in fact 'available' to the prisoner. [*Second* ], ... whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiff's failure to exhaust as a defense. [*Third* ], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.[FN50]

> FN50. *Id.*

"What constitutes justification in the PLRA context 'must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." '[FN51] If the court determines that the inmate plaintiff was indeed justified in failing to exhaust-and exhaustion can no longer be achieved because administrative remedies are no longer available-this shortcoming is excused, and the suit may proceed.[FN52]

> FN51. *Brownell v. Krom,* 446 F.3d 305, 312 (2d Cir.2006) (quoting *Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir.2004)).

> FN52. *See Giano,* 380 F.3d at 676.

C. Constitutional Standard: The Eighth Amendment
The Eighth Amendment prohibits the infliction of cruel and unusual punishment. This prohibition has been interpreted to "[impose] a duty on prison officials to ensure that inmates receive adequate medical care."[FN53] To establish an Eighth Amendment violation arising out of the denial of medical care, a plaintiff must prove that defendants were deliberately indifferent to his serious medical needs.[FN54] The deliberate indifference standard contains both an objective and subjective prong.[FN55] Under the objective prong, an inmate must prove "that the deprivation alleged is 'objectively sufficiently serious' such that plaintiff was denied 'the minimal civilized measure of life's necessit-

ies." '[FN56] This includes " 'not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." '[FN57] The condition, however, must be "one of urgency that may produce death, degeneration, or extreme pain."[FN58] The subjective prong requires a showing that defendant "possessed a 'sufficiently culpable state of mind." '[FN59] The level of culpability must be something "more than negligence, but less than conduct undertaken for the very purpose of causing harm."[FN60] Thus, deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."[FN61]

> FN53. *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006).

> FN54. *See Trammell v. Keane,* 338 F.3d 155, 161-62 (2d Cir.2003).

> FN55. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

> FN56. *Trammell,* 338 F.3d at 162 (quoting *Farmer,* 511 U.S. at 834).

> FN57. *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003) (quoting *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977)). *Accord Brady v. Griffith,* No. 95 Civ. 2364, 1998 WL 8146, at *3 (S.D.N.Y. Nov. 23, 1998).

> FN58. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

> FN59. *Trammell,* 338 F.3d at 162 (quoting *Farmer,* 511 U.S. at 837).

> FN60. *Hathaway,* 37 F.3d at 66.

> FN61. *Farmer,* 511 U.S. at 847.

IV. DISCUSSION
**\*4** The instant motion presents two issues: (1)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

whether Partee's admitted failure to exhaust administrative remedies can be justified, such that his federal claims should be permitted to proceed, and (2) if Partee's failure to exhaust can be justified, whether the allegations in the Complaint succeed in stating a viable claim.

A. Special Circumstances and the Failure to Exhaust

Partee pursued his administrative grievance against Dr. D'Silva through the IGRC level, but did not appeal the adverse decision to the CORC. Such a failure to exhaust typically results in dismissal of the complaint. Partee, however, has alleged "special circumstances" which may serve to excuse this deficiency. FN62 Specifically, Partee points out that the IGRC decision held that "[t]he grievant's requested action is beyond the purview of the IGRC." FN63 Partee argues that he reasonably understood this decision to mean that his dispute with Dr. D'Silva was not grievable and that "if the grievance personnel say it's not grievable, then Plaintiff should be protected from having a court say later that the Plaintiff should have grievanced [sic] it." FN64

> FN62. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.Opp.") at 3-4.

> FN63. 7/11/06 Memorandum at 4.

> FN64. Pl. Opp. at 3.

The circumstances surrounding Partee's failure to exhaust are similar to those found in *Giano v. Goord.* In that case, the Inmate/Plaintiff brought suit without first exhausting because he misread DOCS regulations and concluded that administrative redress was foreclosed as to one of his grievances when in fact it was not. FN65 When the defendants in *Giano* asserted failure to exhaust as a ground for dismissal, the Second Circuit held that although Giano had "read DOCS regulations incorrectly, his interpretation was hardly unreasonable." FN66 Noting that the standard by which a proffered

justification should be evaluated is whether the circumstances "might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way[,]" the court found Giano's failure to exhaust to be justified. FN67 Similarly, an uncounselled prisoner might understandably fail to properly appeal his grievance to the CORC level when the IGRC decision itself declares the grievance to be outside the "purview of the IGRC." FN68 Therefore, Partee's failure to fully exhaust his claims in grievance # 28014-06 as required by the PLRA is justified.

> FN65. *See* 380 F.3d at 674.

> FN66. *Id.* at 679.

> FN67. *Id.*

> FN68. 7/16/06 Memorandum at 4.

The next question, then, is whether administrative remedies are still available to Partee (in which case dismissal without prejudice is proper) or whether administrative remedies are unavailable to him (in which case the suit should continue on to the merits). FN69 The IGP rules mandate that "[i]f the grievant ... wishes to appeal to the superintendent, he or she must complete and sign the appeal section on the IGRC response form ... and submit it to the grievance clerk *within seven calendar days* after receipt of the IGRC's written response." FN70 As any appeal by Partee is now time-barred, he no longer has administrative remedies available.

> FN69. *See Giano,* 380 F.3d at 679-80.

> FN70. 7 N.Y. Comp.Codes R. & Regs. § 701.5(c)(1).

B. Deliberate Indifference and Failure to State a Claim

1. Dr. D'Silva

**\*5** In order to state a claim for deliberate indifference, Partee must allege facts indicating that a

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

substantial risk of serious harm would arise from the denial of the requested dental care-i.e. new dentures-and that the defendants perceived this risk and chose not to provide the requested treatment. Partee has satisfied the first requirement. As the Second Circuit held in *Chance v. Armstrong,* insufficient dental treatment may rise to the level of a Constitutional violation if it leads to extreme pain, deterioration of the teeth, and an inability to eat properly. [FN71] Partee has alleged "pain, loss of teeth, discomfort, ... infection and life threatening complications [ ]" as a result of Dr. D'Silva's refusal to provide dentures without first extracting Partee's teeth. [FN72] Taking these allegations to be true, the negative consequences alleged are "sufficiently serious" to satisfy the objective component of the deliberate indifference standard.

FN71. 143 F.3d 698, 703 (2d Cir.1998).

FN72. Compl. ¶ III.

On the other hand, Partee has not satisfied the subjective component of the deliberate indifference standard. Partee's allegations, in fact, show that D'Silva perceived Partee's need for dentures and offered to take the impressions necessary to provide them. [FN73] The allegation that D'Silva refused to provide the dentures unless she was allowed to extract Partee's upper teeth indicates not deliberate indifference to Partee's dental needs, but rather a medical determination that *additional* treatment was necessary. [FN74]

FN73. *See* 6/29/06 Grievance at 1.

FN74. *See id.*

Partee's allegations, at bottom, reflect his opinion that the course of treatment prescribed by Dr. D'Silva was incorrect, and that the impressions should have been taken without first extracting Partee's teeth. The Second Circuit has long held that " '[t]he prisoner's right is to medical care-not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under section 1983." ' [FN75] Moreover, Partee's assertion that the dentists who saw him at Clinton Correctional Facility and Gowanda Correctional Facility did not reach the same conclusion as D'Silva also fails to transform D'Silva's actions into a constitutional violation. [FN76] *First,* six months elapsed between the last time Partee was seen by a dentist and his visit to D'Silva, during which time Partee's dental condition could have changed. [FN77] *Second,* even if D'Silva's diagnosis was incorrect, Partee has only stated a claim for negligence or medical malpractice, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." [FN78] The proper venue for Partee's claim against D'Silva, therefore, is state court. Accordingly, the Complaint is dismissed as to defendant D'Silva.

FN75. *U.S. ex rel. Hyde v. McGinnis,* 429 F.2d 864, 868 (2d Cir.1970) (quoting *Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir.1968)).

FN76. *See* Compl. ¶ II(D).

FN77. *See id.*

FN78. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

2. Defendants Zwillinger, Connolly, and Wright

The Complaint makes no allegations showing deliberate indifference by defendants Zwillinger, Connolly, and Wright. The only allegation made as to these defendants is that they were "informed [of Partee's situation] and took no action whatsoever." [FN79] In this Circuit, a "plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of *respondeat superior* does not apply to § 1983 actions." [FN80] Even if the allegations showed deliberate indifference on D'Silva's part, a prison official "cannot be held liable on the sole basis that he did not act in response to letters of protest...."

Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)
**(Cite as: 2007 WL 2164529 (S.D.N.Y.))**

FN81 Moreover, as discussed above, Partee has failed to allege a constitutional violation. The Complaint is accordingly dismissed as to Defendants Zwillinger, Connolly, and Wright.

> FN79. Compl. ¶ II(D).

> FN80. *Watson v. McGinnis,* 964 F.Supp. 127 (S.D.N.Y.1997) (compiling cases stating personal involvement requirement).

> FN81. *Smart v. Goord,* 441 F.Supp.2d 631, 643 (S.D.N.Y.2006) (citing *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)).

### 3. Defendant Goord

**\*6** Partee alleges that, in addition to "[taking] no action" after being informed of Partee's situation, former Commissioner Goord further violated Partee's constitutional rights by being "responsible for the policy that resulted in Plaintiff being uprooted from one facility and transferred to another while undergoing medical procedures and each time being placed at the end of a new list for at least six months or more...." FN82 *First,* Partee's deliberate indifference claim against Goord is dismissed for lack of personal involvement and the failure to allege a constitutional violation. *Second,* Partee's claim that the DOCS transfer policy violates his constitutional rights has not been fully grieved through the IGP. The "special circumstances" which served to justify Partee's failure to exhaust his deliberate indifference claim do not apply to this transfer claim, as no mention of unconstitutional transfer procedures was made in IGP Grievance # 28014-06. Therefore, the Complaint must be dismissed as to defendant Goord for failure to exhaust administrative remedies before bringing suit as required by the PLRA. FN83

> FN82. Plaintiff's Traverse ¶ 6.

> FN83. Plaintiff's Fourteenth Amendment claim, which consists entirely of an assertion of a right "to expect equal protection

of the law to in include [sic] due process in prison administrative proceeding," must also be dismissed for failure to exhaust. Compl. ¶ V.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted and this case is dismissed. The Clerk of the Court is directed to close this motion [Docket # 10] and this case.

SO ORDERED:

S.D.N.Y.,2007.
Partee v. Grood
Not Reported in F.Supp.2d, 2007 WL 2164529 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.